UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| T.W., a minor, by Essie McKenzie, her mother and natural guardian; and Essie McKenzie, as trustee for the heirs and next of kin of T.R.W., deceased,<br><br>Plaintiffs,<br><br>v.<br><br>Walmart Stores, Inc.,<br><br>Defendant. | Case No. 22-CV-1584 (PJS/ECW)<br><br>ORDER |

William Starr, LAW OFFICE OF WILLIAM STARR, for plaintiffs.

Angela Beranek Brandt, LARSON KING, LLP, for defendant.

This lawsuit arises out of an unimaginable tragedy. In August 2019, Roberto Hipolito slept overnight in his minivan at the back of the parking lot of the Walmart store in Fridley, Minnesota. The following morning, Hipolito cooked breakfast on a portable butane stove. Without allowing the stove to cool, Hipolito put it back in his minivan, put flammable bedding on top of it, drove the minivan to a parking spot closer to the entrance of the Walmart, and went inside to shop. While Hipolito was shopping, his minivan caught fire, and the fire spread to a nearby car in which the daughters of plaintiff Essie McKenzie were sleeping. Both girls were severely burned, and one later died from her injuries.

McKenzie brought this action against Walmart on behalf of her surviving daughter and the estate of her deceased daughter. The matter is now before the Court on Walmart's motion to dismiss. For the reasons that follow, the Court finds that Walmart cannot be held liable for the injuries caused by Hipolito under any of the legal theories pleaded in the complaint, and therefore the Court must dismiss this case.

## I. BACKGROUND

Walmart has long maintained a policy of allowing travelers in cars, minivans, recreational vehicles ("RVs"), and other types of vehicles to park overnight in its stores' parking lots. Compl. ¶¶ 10–11. As Walmart explains on its website, the invitation does not include water, sewer, or electrical connections or any other type of accommodation for overnight parkers; they are simply permitted to sleep in their vehicles overnight. *Id.* ¶ 11. Walmart does not monitor the vehicles that park in its lots overnight. *Id.* ¶ 14. Although Walmart says on its website that overnight parking requires the permission of the store's manager, *id.* at 11, in practice people simply show up and park. *Id.* ¶ 14. The Walmart Supercenter in Fridley, Minnesota, is one of the many Walmart stores that allow this type of overnight parking.

On the morning of August 6, 2019, McKenzie pulled into the parking lot of the Fridley Walmart with her two daughters—Taraj'i (age nine) and Ty'rah (age six)—and left them sleeping in her parked vehicle while she went into the store to buy groceries.

*Id.* ¶¶ 6–7.  Around the same time, Hipolito—who had parked overnight in the parking lot—cooked breakfast outside his minivan using a portable butane stove.  *Id.* ¶¶ 9–10, 15.  After he finished cooking, and without allowing the stove to cool properly, Hipolito stowed the stove in his vehicle, placed some flammable bedding on top of it, and moved his minivan from the back of the parking lot to a spot closer to the front of the store, next to McKenzie's vehicle.  *Id.* ¶¶ 15–16.  While Hipolito was shopping, his van caught on fire and the fire spread to McKenzie's vehicle, where her daughters were sleeping.  *Id.* ¶¶ 16–17.  Both children sustained severe burns from the fire; Ty'rah died the following day, and Taraj'i suffered permanent injuries.  *Id.* ¶ 20.

McKenzie brought this diversity action against Walmart asserting five claims for relief under Minnesota law:  nuisance, negligence, negligence per se, wrongful death, and violations of Minn. Stat. § 327.  Walmart has moved to dismiss all claims.

II. ANALYSIS

*A. Standard of Review*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  In reviewing a motion to dismiss under Fed.

R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Du Bois v. Bd. of Regents*, 987 F.3d 1199, 1202 (8th Cir. 2021). Although the factual allegations in the complaint need not be pleaded in detail, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

### B. Minn. Stat. § 327.24

Most of plaintiffs' brief focuses on Count IV of their complaint, in which plaintiffs seek to recover from Walmart under Minn. Stat. § 327.24. At oral argument, however, plaintiffs largely abandoned this claim, and for good reason.

Section 327 imposes a number of requirements on operators of "manufactured home parks" and "recreational camping areas." *See* Minn. Stat. §§ 327.14–327.28. Plaintiffs concede that the Walmart parking lot is not a "manufactured home park." They have contended, however, that it is a "recreational camping area."

Section 327 defines a "recreational camping area" as "any area, whether privately or publicly owned, used on a daily, nightly, weekly, or longer basis for the accommodation of five or more tents or recreational camping vehicles free of charge or for compensation." *Id.* § 327.14 subd. 8. For purposes of this case, the critical term is "accommodation." Plaintiffs argue that Walmart "accommodated" recreational camping vehicles simply by allowing RVs to park in its lot overnight, thus obligating

Walmart to comply with the requirements imposed by § 327 on owners of recreational camping areas (e.g., obtaining and posting a license and providing an attendant). *See id.* §§ 327.15, 327.20.

The Court disagrees. If simply allowing RVs to park in a lot on even a "daily" basis would turn the lot into a "recreational camping area" for purposes of § 327, then ordinary parking lots all over Minnesota—such as parking lots at shopping malls, state parks, sports stadiums, and RV dealers, to name just a few—would be regulated as "recreational camping areas" so long as they were large enough to fit five or more RVs on a daily basis. That would be an absurd result. Clearly, then, "accommodation" must mean something more than merely "allowed to park."

Here, however, plaintiffs have not alleged that Walmart did anything except allow cars, vans, RVs, and other vehicles to park in its lot overnight. It appears to be undisputed that Walmart did not provide accommodations of any kind to overnight parkers—no running water, no access to a sewer line, no showers or toilets, no electrical outlets, no laundry facilities. Because Walmart did not offer any "accommodation" to vehicles parked overnight in its lot—as that term is used in § 327—the Court finds that the parking lot was not a "recreational parking area" for purposes of the statute.

Even if the Court is incorrect and Walmart's parking lot is a "recreational camping area," the Court would still dismiss plaintiffs' claim under § 327 because

plaintiffs have not plausibly alleged that a violation of the statute led to their injury. *See id.* § 327.24 (affording right of action to persons "injured or threatened with injury by a violation of sections 327.14 to 327.28"). Plaintiffs have cited Walmart's failure to obtain and display a license and failure to adhere to sanitation requirements, Compl. ¶¶ 39–40, but neither of those alleged violations of § 327 had anything to do with plaintiffs' injuries. The only potentially relevant violation identified by plaintiffs is Walmart's failure to provide an attendant as required by the statute. *Id.* ¶ 40. But § 327 requires only that an attendant "maintain the park or area . . . in a clean, orderly, and sanitary condition." Minn. Stat. § 327.20 subd. 1(1). It does not even require an attendant to be on site for any particular length of time. Thus, even if Walmart had hired the type of attendant required by § 327, that person would not have been responsible for—nor remotely capable of—monitoring the conduct of every single person who spent the night in his or her vehicle. It is simply not plausible to allege that if Walmart had hired an attendant to keep its parking lot "in a clean, orderly, and sanitary condition," Hipolito would not have put a hot stove in his minivan, placed flammable materials on top of it, and parked next to McKenzie's car.

For these reasons, the Court dismisses Count IV.

*C. Nuisance*

At oral argument, plaintiffs also essentially withdrew the nuisance claim made in Count I of their complaint. This, too, was well advised, as the complaint fails to identify an actual nuisance. Count I variously alleges that Walmart did not comply with laws governing recreational camping areas, that Walmart "maintained a potentially dangerous condition on its premises without informing or warning other members of the general public," that Walmart's failure to maintain its alleged campground "created real hazards" which "endangered the safety and health of those who shop and work in the store or live nearby," and that Walmart's "unregulated, unlicensed, and unmonitored campgrounds pose a threat of illness, injury, noise, and crime to a considerable number of members of the public." Compl. ¶ 24. None of that, however, is enough to state a claim for private or public nuisance.

As a preliminary matter, the complaint does not plead a viable private-nuisance claim because in Minnesota, "[p]rivate nuisance is limited to real property interests." *Anderson v. Minn. Dep't Nat. Res.*, 693 N.W.2d 181, 192 (Minn. 2005) (rejecting pesticide-related nuisance claim by beekeepers who did not own property on which affected colonies were kept); *see also* Minn. Stat. § 561.01 (affording cause of action to "any person whose *property* is injuriously affected or whose personal enjoyment is lessened by the nuisance" (emphasis added)). Plaintiffs obviously have not alleged an injury

related to real property, and they cite no cases permitting recovery for personal injuries under a private-nuisance theory.

As to public nuisance: In Minnesota, public nuisance is a misdemeanor under Minn. Stat. § 609.74, which provides that a public nuisance exists when a person "by an act or failure to perform a legal duty intentionally . . . maintains or permits a condition which unreasonably annoys, injures or endangers the safety, health, morals, comfort, or repose of any considerable number of members of the public." *Id.* § 609.74(1). A public nuisance is a crime and ordinarily "must be redressed by a prosecution in the name of a state," *Hill v. Stokely-Van Camp, Inc.*, 109 N.W.2d 749, 753 (Minn. 1961) (quoting *Aldrich v. City of Minneapolis*, 53 N.W. 1072, 1073 (Minn. 1893)), but an exception exists if a plaintiff can show "that he has suffered an injury special or peculiar to himself which is not common to the general public." *Id.*

This poses a number of problems for plaintiffs' public-nuisance claim. One is that, in contrast to cases involving classic public nuisances such as noxious fumes or obstructed streets, *see Aldrich*, 53 N.W. at 1073, the complaint here is unclear about exactly what injurious hazards Walmart's parking lot posed to the general public. The only specific hazards identified in Count I are illness, noise, and crime, Compl. ¶ 24, but plaintiffs were not injured by illness, noise, or crime. Another problem is that the complaint is devoid of allegations that Walmart had an intent to maintain any

supposedly injurious conditions in its parking lots. Those flaws make it impossible for plaintiffs to take advantage of the exception for special injuries not common to the general public.

At bottom, plaintiffs have failed to clearly identify a public nuisance or explain how that nuisance caused their injuries. As a result, Count I must be dismissed.

### D. Negligence

The real heart of plaintiffs' case is their claim of ordinary negligence, as alleged in Counts III and V.[1] "To recover for a claim of negligence, a plaintiff must prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury."[2] *Domagala v. Rolland*, 805

---

[1]Plaintiffs also include a claim for negligence per se in Count II of the complaint, but that claim fails. To the extent that the claim is premised on alleged violations of Minn. Stat. § 327, the claim must be dismissed, as Walmart did not violate § 327 (as explained above). And to the extent that the claim is premised on violations of Fridley Code § 108.13, it also must be dismissed, as that ordinance governs recreational campfires, not butane stoves. *See id.* §§ 108.13-2, 108.13-12 (referring to wood and charcoal fuel and addressing propane torches as means for starting open fires). Moreover, the injuries in this case were caused by the improper *storage* of a butane stove that had been turned off, an issue that the Fridley ordinance does not address. *See Anderson v. Minn. Dep't Nat. Res.*, 693 N.W.2d 181, 190 (Minn. 2005) (explaining that "the harm must be of the type the legislature intended to prevent by enacting the statute" for negligence per se claim to succeed). Count II is therefore dismissed.

[2]The elements of plaintiffs' wrongful-death claim (Count V) are materially identical. *See Stuedemann v. Nose*, 713 N.W.2d 79, 83 (Minn. Ct. App. 2006) ("A plaintiff who alleges negligence in a wrongful-death action must prove that (1) the defendant had a duty, (2) the defendant breached that duty, (3) there was a death, and (4) the
(continued...)

N.W.2d 14, 22 (Minn. 2011). In essence, plaintiffs' theory is that by allowing overnight parking, Walmart created risks to its retail shoppers, and Walmart failed to use reasonable care to protect retail shoppers from those risks.

"The existence of a duty of care is a threshold question because a defendant cannot breach a nonexistent duty." *Doe 169 v. Brandon*, 845 N.W. 2d 174, 177 (Minn. 2014). "Minnesota law follows the general common-law rule that a person does not owe a duty of care to another—e.g., to aid, protect, or warn that person—if the harm is caused by a third party's conduct." *Id.* at 177–78 (citing *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn. 1979)). That is precisely the situation presented here: Plaintiffs' injuries were caused by the conduct of a third party (Hipolito), and thus, as a general matter, Walmart had no duty to protect plaintiffs from that conduct. But that does not end the analysis of plaintiffs' negligence claims, as Minnesota recognizes an "own-conduct" exception to this general rule for cases in which "the defendant's own conduct creates a foreseeable risk of injury [from a third party] to a foreseeable plaintiff." *Domagala*, 805 N.W.2d at 23.[3]

---

[2](...continued)
breach of duty caused the death.").

[3]Minnesota also recognizes an exception to the general rule "when there is a special relationship between a plaintiff and a defendant and the harm to the plaintiff is foreseeable," *Doe 169 v. Brandon*, 845 N.W. 2d 174, 178 (Minn. 2014), but plaintiffs have expressly (and wisely) disavowed the special-relationship theory for purposes of this
(continued...)

Minnesota courts applying the own-conduct exception distinguish between a defendant's *misfeasance* (defined as "active misconduct working positive injury to others") and *nonfeasance* (defined as "passive inaction or a failure to take steps to protect [others] from harm"). *Fenrich v. The Blake Sch.*, 920 N.W.2d 195, 203 (Minn. 2018) (quoting *Doe 169*, 845 N.W.2d at 178). Under Minnesota law, only misfeasance can give rise to a duty to protect someone from harm caused by a third party; mere nonfeasance is insufficient.

Here, the complaint alleges that Walmart created foreseeable dangers to the plaintiffs in two ways: by inviting overnight camping and by failing to observe safety regulations that apply to recreational camping areas. Compl. ¶¶ 35–36. Plaintiffs conceded at oral argument, however, that the latter is an allegation of nonfeasance that cannot give rise to recovery against Walmart. Only Walmart's inviting members of the public to spend the night in their vehicles in its parking lot could plausibly be characterized as misfeasance. The crucial question, then, is whether Walmart's alleged misfeasance "created a *foreseeable risk* of injury to a *foreseeable plaintiff*." *Doe 169*, 845 N.W.2d at 178.

The Minnesota Supreme Court has described the foreseeability inquiry as follows:

---

³(...continued)
motion. *See* Plfs.' Mem. Opp'n Mot. Dismiss 7, ECF No. 15.

> To determine whether the risk of injury to the plaintiff is "foreseeable," we "look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." [*Whiteford ex rel. Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998)]. The risk must be "clear to the person of ordinary prudence." *Connolly v. Nicollet Hotel*, 254 Minn. 373, 381–82, 95 N.W.2d 657, 664 (1959). If the connection between the danger and the defendant's own conduct is too remote, there is no duty. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986).

*Doe 169*, 845 N.W.2d at 178. "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of an accident was clear to the person of ordinary prudence.'" *Domagala*, 805 N.W.2d at 27 (quoting *Connolly*, 95 N.W.2d at 664). "When the question of foreseeability is a 'close case,' the question must be submitted to a jury to resolve. . . . But when foreseeability is clear, it should be decided by the court as a matter of law." *Smits ex rel. Short v. Park Nicollet Health Servs.*, 979 N.W.2d 436, 458 (Minn. 2022) (citations omitted).

The Minnesota Supreme Court recently addressed the issue of foreseeability in this context in *Smits*. In ruling that a mental-health provider did not owe a duty to protect the family of a discharged patient, the majority characterized the issue as whether it was "foreseeable that [the patient] would commit multiple homicides." *Id.* at 459. In contrast, the dissent characterized the issue more broadly as whether "there was an unreasonable risk that [the patient] might become dangerous." *Id.* at 451 (Hudson, J.,

-12-

dissenting). Obviously, the wider the foreseeability issue is framed, the easier it will be for the plaintiff to recover.

Here, plaintiffs advocate for a wide view of foreseeability. They frame the issue as whether Walmart had a duty to protect retail shoppers from "fires that could result" from overnight parkers cooking on camp stoves. Plf.'s Mem. Opp'n Mot. Dismiss 14, ECF No. 15. Somewhat inconsistently, plaintiffs also frame the issue as whether there was "a foreseeable risk that Mr. Hipolito would use and store a cook stove negligently and thereby cause harm to others." Compl. ¶ 36.

Plaintiffs' framing of the issue is difficult to reconcile with the decisions of the Minnesota Supreme Court in "own-conduct" cases in which a defendant was found to have a duty to protect a plaintiff from harms caused by third parties. For example, in *Connolly v. Nicollet Hotel*—a foundational case cited frequently in contemporary own-conduct cases—the court examined whether a hotel had a duty to protect a pedestrian who was struck in the eye with a "mud-like substance" apparently thrown out of a hotel window by a rowdy guest. 95 N.W.2d at 661. The court framed its foreseeability inquiry quite narrowly: Rather than asking (for example) whether it was foreseeable to the hotel that one guest might be harmed by the misconduct of another, the court asked whether "the dropping of objects from the hotel windows by certain of those occupying the premises was within the range of foreseeability." *Id.* at 665.

In a more recent case, the Minnesota Supreme Court held that a school had a duty to protect a motorist who was injured in an accident caused by a student driving a van on a school-sponsored trip to an athletic competition. *See Fenrich*, 920 N.W.2d at 206–07. Again, though, the court framed the foreseeability inquiry quite narrowly. The court did not broadly ask whether it was foreseeable that a student driving a van to an athletic competition could injure another motorist, but rather asked whether it "was foreseeable that a teenage driver on a long trip, in a car with three other teenagers, could get distracted and collide with another driver." *Id.* at 206. In other words, the court built into the foreseeability inquiry (1) the age of the driver; (2) the length of the trip; (3) the number of other passengers in the car; (4) the age of those passengers; and (5) the cause of the specific accident.

In light of *Connolly*, *Fenrich*, and similar cases, the Court finds that Walmart cannot be held liable under the "own conduct" exception unless it was objectively reasonable for Walmart to expect that inviting members of the public to sleep overnight in their cars, vans, RVs, and other vehicles in the back of its parking lot (the conduct that is alleged to be Walmart's misfeasance) would put retail patrons in danger of a car fire caused by an overnight parker's negligent storage of a cooking stove. Again, the question is not whether such an incident was "within the realm of any conceivable

-14-

possibility," but whether such an incident was "objectively reasonable to expect." *Whiteford*, 582 N.W.2d at 918.

The question pretty much answers itself. The incident that caused plaintiffs' injuries was a freak event, and the connection between that freak event and Walmart's alleged misfeasance was remote. *See Doe 169*, 845 N.W.2d at 179 ("Simply put, the link between the District Council and Doe's injury is too attenuated."). Again, Walmart's alleged misfeasance was inviting people to sleep overnight in their vehicles in the back of its parking lot. That may very well have created some foreseeable risks to retail shoppers; the shoppers might, for example, slip on trash or waste left by the overnight parkers. But it was not reasonably foreseeable to Walmart that inviting people to sleep overnight in their vehicles in the back of its parking lot would lead to (1) an overnight parker cooking breakfast on a butane stove; (2) the overnight parker putting that stove back in his vehicle while it was still hot enough to cause a fire; (3) the overnight parker piling flammable bedding on top of the hot stove; (4) the overnight parker immediately driving his car to the front of the lot and parking near a retail shopper's vehicle; (5) the overnight parker immediately leaving his vehicle and entering the Walmart; (6) the overnight camper's vehicle quickly being consumed in flames; (7) the flames spreading to the car of a retail shopper; (8) the retail shopper's car quickly being consumed in flames; (9) the retail shopper's car containing two sleeping occupants; and (10) those

occupants being too young or too deeply asleep to simply leave the car.  This chain of events is (barely) conceivable, but it is not reasonably foreseeable.[4]

As noted, "[i]n close cases, the issue of foreseeability should be submitted to the jury."  *Domagala*, 805 N.W.2d at 27.  But most cases are not close.  Indeed, the Minnesota Supreme Court has recently emphasized that "not every case is a close case" and that

---

[4]Another factor distinguishes this case from cases in which the Minnesota Supreme Court has held that a harm from a third party was foreseeable:  In those cases, the defendant was well aware of specific characteristics of the third party that posed specific risks to the plaintiffs.  *See, e.g.*, *Abel v. Abbott Nw. Hosp.*, 947 N.W.2d 58, 78–80 (Minn. 2020) (emphasizing university's and hospital's knowledge of practicum director's history of racial and sexual harassment in determining it foreseeable that director would harass plaintiff); *Fenrich*, 90 N.W.2d at 206 (noting that school knew that driver of van was 16 years old, had only recently been licensed to drive, and was driving a lengthy distance without adult supervision or instruction); *Connolly*, 95 N.W.2d at 384–45 (holding that risk of injury to pedestrians from hotel guests throwing objects from window was foreseeable when hotel had observed several days of damage to premises from rowdy and intoxicated convention-goers and had received reports of water bags being thrown from the hotel onto the sidewalk).  Walmart had nothing like this kind of knowledge about Hipolito specifically or overnight parkers generally.

To be clear,  the Minnesota Supreme Court has not gone so far as to make this type of knowledge a prerequisite to finding that a harm by a third party was foreseeable, but the cases finding that a third party's harm was *not* foreseeable have emphasized the defendant's comparatively low level of knowledge regarding the third party's risky characteristics.  *See, e.g.*, *Smits ex rel. Short  v. Park Nicollet Health Servs.*, 979 N.W.2d 436, 459 (Minn. 2022) (finding that mental-health provider was not "on notice of potential violence" to patient's family when it knew only that patient "was a man, with a wife and children, who had severe depression"); *Doe 169*, 845 N.W.2d at 179 (finding that faith council did not create foreseeable risk of sexual abuse suffered by plaintiff when it renewed abuser's ministerial credentials, in part because it had renewed his credentials for many years before it could have become aware of his history of inappropriate behavior with minors).

"[t]he general rule, long-established in our history, is that determinations of duty are questions for the court to decide." *Smits ex rel. Short*, 979 N.W.2d at 458–59; *see also, e.g.*, *id.* at 459 (rejecting approach that would "abdicate our responsibility and hold that in practice nearly every duty claim is a 'close case'"); *Domagala*, 805 N.W.2d at 27 n.3 (collecting cases demonstrating that foreseeability should ordinarily be treated as a matter of law for courts to decide).

This is not a close case. Walmart did not owe plaintiffs a duty to protect them from the unforeseeable harm they suffered on account of the unforeseeable conduct of Hipolito. Accordingly, plaintiffs' negligence and wrongful-death claims must be dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant's motion to dismiss [ECF No. 10] is GRANTED; and

2. Plaintiff's Complaint [ECF No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 25, 2023

s/Patrick J. Schiltz  
Patrick J. Schiltz, Chief Judge  
United States District Court